## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF MARYLAND

In re: Health Management Resources, Inc.    *           Case No. 05-12871

    *

    *           Chapter 7

          Debtor,    *

    *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

Steven H. Greenfeld,    *

    *

      Plaintiff,    *

    *

Vs.    *       Adversary No.: 08-47

    *

    *

Weinstock, Friedman & Friedman, P.A.    *

and Pre-Paid Legal Services, Inc.    *

and    *

    *

1

BRUCE RICHARDSON                          *

680 Americana Drive                       *

Annapolis, Maryland 21403,                *

                                          *

              Defendants                  *

*      *      *      *      *      *      *      *      *      *      *      *

## AMENDED COMPLAINT


        Plaintiff, STEVEN H. GREENFELD, TRUSTEE FOR THE BANKRUPTCY
ESTATE OF HEALTH MANAGEMENT RESOURCES, INC., by and through his
attorneys, Adam M. Freiman and Sirody, Freiman and Feldman, P.C., hereby sues the
Defendants, WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A., BRUCE RICHARDSON
and PRE-PAID LEGAL SERVICES, INC. and for reasons states as follows:

1.      That the Plaintiff STEVEN H. GREENFELD is the Trustee for the Bankruptcy
Estate of HEALTH MANAGEMENT RESOURCES, INC. ("HMR") which, at all times
relevant hereto was a corporation incorporated in the State of Maryland with its corporate
headquarters located in Prince George's County.  HMR, as referred to herein, includes
HMR's agents, employees and officers.  Plaintiff reincorporates as if fully stated herein
all of the allegations set forth in Plaintiff's original Complaint filed in this civil action.
All claims asserted herein arise out of the conduct, transaction and occurrence that was
set out and/or attempted to be set out in the original Complaint.  All claims and

2

allegations set forth herein relate back to the date that the aforesaid original Complaint was filed in the Circuit Court for Prince George's County.

2.      That at all times relevant hereto, Defendant WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A. ("Weinstock") was and is a law firm incorporated in the State of Maryland with headquarters at 4 Reservoir Circle in Pikesville, Maryland.

3.      That at all times relevant hereto, Defendant PRE-PAID LEGAL SERVICES, INC. ("PPLS"), was and is a corporation doing and conducting regular business in the State of Maryland with corporate headquarters located at One Pre-Paid Way in Ada, Oklahoma. Upon information, belief and business entity search with the Maryland State Department of Assessments and Taxation, the Defendant PPLS does not have a resident agent in Maryland.

4.      That at the time of the conduct, transactions and occurrences set forth herein, Defendant BRUCE RICHARDSON ("Richardson") was an associate attorney and employee of Defendant Weinstock at 4 Reservoir Circle in Pikesville, Maryland. That both Defendants Weinstock and PPLS as referred to in this Complaint, includes the respective Defendant entities and their agents, servants and employees, including, without limitation, Mr. Edward J. Friedman, Defendant Richardson and Mr. Leonard Tober ("Mr. Tober"), attorneys and PPLS providers with Defendant Weinstock at the time of the conduct, transaction and occurrence set forth herein.

3

5.     That at all times relevant hereto, the professional misconduct, negligence, fraud, breach of contract, and egregious mishandling of HMR's legal affairs, as set forth below, occurred in Prince George's County, Maryland, Baltimore County, Maryland, in the Federal Bankruptcy Court in Prince George's County, Maryland and resulted in damages to HMR and the Bankruptcy Estate of HMR in Prince Georges County.   That all times described herein, all Defendants carried on regular business and were doing business in Prince George's County and in the State of Maryland.

6.     At all times relevant hereto, Defendant PPLS marketed and sold pre-paid legal services to HMR through HMR's chief executive officer and to other persons and business entities in Maryland.  That Defendant PPLS claims, asserts and holds out to the general public that Defendant Weinstock, along with all of PPLS's other provider firms, are "carefully screened and selected" to provide legal services to PPLS members.  At all times relevant hereto, Defendant Weinstock's contact with HMR was facilitated exclusively by and through Defendant PPLS.

7.     That Defendant Weinstock claims, asserts and holds out to the general public that "As a Pre-Paid Legal Services, Inc. Provider Firm, we are required to meet certain standards set by our home office in Ada, Oklahoma.  We send reports daily and our performance is monitored regularly.  Pre-Paid Legal Services will not tolerate anything less than excellence."

8.     In September, 2003, HMR was awarded a multi-million dollar U.S. Government

4

contract (No.: DADA-10-03-D-0012) and was selected to provide U.S. Army medical/health care related services there under to the government. At that time, HMR had been successfully operating in business for several years and had other lucrative ongoing contracts for its services.

9.    In January, 2004, HMR's CEO, Rudolph Coleman ("Mr. Coleman"), corresponded with a Ms. Lynn Brown. Ms. Brown's company, DCAA, was assigned by the government to conduct a financial capability review/audit related to the aforementioned government contract. As part of the review/audit, Mr. Coleman was asked to respond to various questions and to provide information regarding HMR's payment of creditors including specifically information pertaining to the handling of debt payment and accounts payable.

10.    Thereafter, in February or March, 2004, HMR, through Mr. Coleman, subscribed to and became a paying member of PPLS. HMR offered the services of PPLS to employees as well as utilizing PPLS services on behalf of the corporation. HMR was assigned by PPLS to Defendant Weinstock, one of PPLS's providers. Defendants Weinstock and Defendant PPLS facilitated the provision of Weinstock's and PPLS's services to HMR through Weinstock's associates Defendant Richardson, Mr. Tober and/or others.

11.    On March 1, 2004, Defendants Richardson and Weinstock provided Mr. Coleman and HMR a generic letter to send to HMR creditors advising creditors that HMR "is

5

undergoing a period of time in which it is restructuring its finances and affairs", asking creditors to be "patient" during this period, stating "we anticipate shortly coming up with a plan to address the needs and demands of creditors in a timely and efficient fashion" and referring any questions "in the interim" to "my counsel, Bruce L. Richardson, Weinstock, Friedman & Friedman, P.A. who can provide you with additional details while this matter is pending."

12.     Thus, through Defendant PPLS, HMR employed the services of Defendant Weinstock and Defendant Richardson, who held themselves out to the public as knowledgeable and experienced in the handling of corporate matters, to represent HMR in connection with negotiating settlement to outstanding accounts payable and to develop an appropriate method of collection of accounts receivable.

13.     On or about March 25, 2004, although Defendant Weinstock had already begun providing legal services to HMR, a formal retainer agreement was entered into between Mr. Coleman on behalf of HMR and Defendant Weinstock.  Under the agreement, in what was termed a "Creditor Workout", Weinstock was to provide professional legal services regarding the handling of HMR's creditors and debt payment, including services with respect to negotiating settlement for outstanding accounts payable.  The Agreement was referenced by Weinstock as "Re: Creditor Workout, Our Intake No.: 341940."  An initial retainer of Five Hundred Dollars ($500.00) was charged with a billable rate of One Hundred and Twenty Five Dollars ($125.00) per hour to be applied.  The fee under the

6

retainer agreement was discounted as per the aforementioned PPLS membership.  Upon belief, Weinstock and Richardson completely neglected to fulfill their obligations under this agreement and were inattentive to HMR's legal needs for which Weinstock had been retained to provide a "creditor workout".

14.    On or about June 28, 2004, the U.S. Government notified HMR of its intention to exercise its option to extend the aforementioned multi-million dollar contract (DADA 10-03-D-0012) with HMR.  However, several weeks later, on August 4, 2004, the U.S. Government sent HMR a letter stating that it now did not intend to exercise its option to extend the contract and that it would continue with the contract only until November 30, 2004.  Plaintiff maintains that the U.S. Government's decision not to extend the aforementioned contract was substantially due to and was a direct and proximate result of the negligent mishandling of, neglect and/or inattention to HMR's legal affairs by Defendants Richardson and Weinstock and by Defendants' breach of their agreement to perform a "creditor workout" on behalf of HMR.  Plaintiff further maintains that if Defendants had properly fulfilled their obligation to represent HMR with respect to the "creditor workout", government contract no.: DADA 10-03-D-0012 would have been extended and ongoing well beyond November 30, 2004 and into the following years.

15.    In October, 2004, Defendant Weinstock convinced HMR that a bankruptcy filing for corporate reorganization was the appropriate method for negotiating settlement as to HMR's outstanding accounts payable and for developing an appropriate method of

7

collection of accounts receivable. Upon the advice of Defendant Weinstock, HMR agreed to request bankruptcy protection under Chapter 11 of the Bankruptcy Code. Defendant Weinstock was compensated for such services directly by HMR and through Defendant PPLS. HMR thus entered a Retainer Agreement with Defendant Weinstock which provided for HMR to pay Weinstock Five Hundred Dollars ($500.00) for legal representation in reference to the filing of a bankruptcy case for reorganization.

16.    On October 21, 2004, an e-mail was sent to Mr. Coleman/HMR from Robert Welborn of Med-National Inc., one of HMR's creditors (a pharmacist provider in Ft. Hood, TX), stating, "Your attempt at confusing us by having a fake attorney phone this office to inform us that you were filing bankruptcy, chapter 11, did not work. Our contact with all of the bankruptcy courts in your section of the country reveals that none have any record of your 'dead beat' thievery scheme." This e-mail from Mr. Welborn to HMR was apparently copied by Mr. Welborn to other agencies including Southtrust Bank, Export/Import Bank, U.S. Army, Navy, Air Force, Veterans Administration, IHS, and others.

17.    In the course of Defendant Weinstock's representation of HMR, HMR was led to believe by Weinstock that a bankruptcy case for reorganization had been filed in December, 2004 or earlier and Defendants Richardson and Weinstock purported to file (and have Mr. Coleman certify) an "Emergency Motion for Interim Order Approving Post Petition Factoring" in purported Case No. 04-3-5872 Chapter 11. In fact, Defendant

8

Weinstock, after negligently and egregiously failing to handle HMR's legal affairs and the "creditor workout" for which they had been retained, had created a fictitious case number which was used to convince HMR that an actual Petition for reorganization had been filed when it had not.  Thus, Defendants created forged Orders purportedly from the Bankruptcy Court to attempt to obtain "post-petition" factoring on behalf of HMR.

18.     Thereafter, on February 11, 2005, Robert Zadek, Esq. of Buchalter, Nemer, Fields & Younger, an attorney for a company called Federal National Payables that was servicing HMR's government contracts, sent a fax transmission to Defendants Richardson and Weinstock stating "Attached is a copy of the docket sheet which I pulled off Pacer.  The factoring order is not listed.  Please send me a file endorsed copy."

19.     On February 15, 2005, HMR was sent a letter from Judy Shaw at Federal National Payables advising HMR that Federal National was no longer able to provide HMR with financing for its accounts receivable and referring all questions to Federal National's aforementioned counsel Robert Zadek, Esq.   Upon receipt of the fax transmission, Beverly Ellis of HMR e-mailed Defendants Richardson and Weinstock regarding how to have funds belonging to HMR released by Federal National, how to handle HMR's payroll checks, and how to get the accounts payable from Federal National to cover employee payrolls.  Defendants Richardson and Weinstock responded in an e-mail to Ms. Ellis that same day stating, "the possibility of new financing is dependent on the status of the Co. in Chapter 11 – which has yet to be established."

9

20.    On February 16, 2005, Defendants Richardson and Weinstock provided HMR with a generic letter from Weinstock addressed to the creditors of HMR employees requesting that employees' creditors be patient in waiting for HMR's employees' obligations to be paid.

21.    Thereafter, partners of Defendant Weinstock received notice that their firm's actions were being investigated by the United States Department of Justice and the Federal Bureau of Investigation.   Specifically, on February 24, 2005, assistant U.S. attorney, Jefferson Gray sent a letter to Weinstock partner Edward Friedman, Esq. subpoenaing Weinstock's HMR file for the grand jury in the case of *U.S. vs. Bruce Richardson*.

22.    Thereafter, Defendant Weinstock negligently, recklessly, carelessly and intentionally compounded their mishandling of HMR's legal affairs and failed to disclose to HMR their aforementioned actions and conduct and made every effort to obscure and conceal from HMR the effect that Defendant Weinstock's and Defendant Richardson's conduct had upon HMR's business.   Defendant Weinstock then filed a real Chapter 11 Petition for reorganization and continued to negligently and intentionally provide so-called advice, counsel and representation to HMR notwithstanding the open and obvious conflict of interest that had developed between Weinstock's interests and HMR's interests.

23.    That Defendant Weinstock compounded its negligent acts by negligently,

10

carelessly and intentionally advising HMR to convert its Chapter 11 case into a case under Chapter 7 of the Bankruptcy Code a mere month after the filing of the non-fictional Chapter 11 Petition.  This conversion of the bankruptcy was not, in fact, authorized or consented to by HMR because Defendant Weinstock had: (a) failed to inform and advise HMR of the circumstances necessitating conversion including the negligent mishandling of and inattention to HMR's legal affairs dating back to March, 2004, the time of Defendant Weinstock's retention; (b) failed to inform and advise HMR of the false Chapter 11 filing, of their negligent failure to perform under the agreement "Re: creditor workout" and/or of their negligent mishandling and/or non-handling and neglect of HMR's legal affairs dating back to March, 2004; (c) failed to inform and advise HMR of the conflict of interest that had developed between HMR's interests and Defendant Weinstock's interests; and/or (d) failed to inform and advise HMR of the impact that the delayed filing**,** mishandling and neglect of HMR's legal affairs had upon HMR's business.  As a result of Defendant Weinstock's conduct, HMR was forced to abandon all business operations, suffered the loss of government contracts valued in the multiple millions of dollars, and was forced to liquidate.

24.    Upon information and belief, throughout the course of events set forth above, Defendant Weinstock sent**,** purported to send and/or should have sent reports to Defendant PPLS and Defendant PPLS monitored, purported to monitor and/or should have monitored Defendant Weinstock's performance regularly with respect to Weinstock's representation of HMR and HMR personnel.

11

## COUNT I - - - PROFESSIONAL MALPRACTICE/

## NEGLIGENCE (Weinstock, Richardson and PPLS)

25.     Plaintiff reincorporates, as if fully stated herein, all of the allegations set forth in Paragraphs One through Twenty-Four (24) above.

26.     Defendant Weinstock and Defendant Richardson owed HMR a reasonable duty to exercise that degree of care and diligence in the filing of HMR's bankruptcy case and in the handling of HMR's legal affairs and bankruptcy case as used by other attorneys engaged in the practice of law.  This reasonable duty included:

(a)   Acting in HMR's best interests rather than Defendant Weinstock's or Defendant Richardson's self interests;

(b)  Advising HMR as to the obvious conflict of interest that had arisen in February, 2005 or prior thereto;

(c) Withdrawing from HMR's case in view of the obvious conflict of interest that had developed by way of the actions and conduct of Weinstock's representation;

(d) Referring HMR's legal matters to competent and non-conflicted counsel who could effectively represent HMR in connection with negotiating settlement to outstanding accounts payable and developing an appropriate method of collection of accounts receivable and who could effectively file and follow through with HMR's Petition for

12

reorganization;

(e)  Acting in HMR's best interests by not filing a Chapter 7 Petition for liquidation when a timely and properly filed Chapter 11 Petition was an obviously viable way for HMR to proceed with its business and where HMR had not, in fact, authorized or consented to conversion because HMR was not fully advised of the circumstances leading up to conversion**;**

(f)  Properly supervising, monitoring, maintaining oversight and control of the handling of HMR's legal affairs including the bankruptcy case and "creditor workout" and providing legal services with the requisite degree of care required under the law;

(g)  Preventing, under the totality of the circumstances described herein, foreseeable harm to HMR's ongoing business interests; and/or

(h)  Conducting themselves reasonably and non-negligently in other respects not now known but which may become known throughout the course of discovery in this case.

27.  By failing to exercise that reasonable degree of care and diligence as exercised by other attorneys engaged in the practice of law, Defendants Richardson and Weinstock breached the aforesaid duty that was owed to HMR in violation of the standards reasonably to be expected of reasonably competent practitioners in the legal profession, and in these circumstances, and by their acts and omissions as alleged herein, negligently

13

failed to render proper legal representation to HMR.

28.     By failing to disclose to HMR their actions and by making efforts to obscure and conceal from HMR the effect that their conduct had upon HMR's business, Defendant Weinstock and Defendant Richardson breached the duty owed to HMR in violation of the standards reasonably to be expected of a reasonably competent practitioner in the legal profession, and in these circumstances, and by their acts and omissions as alleged herein, negligently failed to render proper legal representation to HMR.

29.     By continuing to provide so-called advice, counsel and representation to HMR notwithstanding the open and obvious conflict of interest that had developed, Defendant Weinstock breached the duty that it owed to HMR in violation of the standards reasonably to be expected of a reasonably competent practitioner in the legal profession, and in these circumstances, and by its acts and omissions as alleged herein, negligently failed to render proper legal representation to HMR.

30.     That by advising HMR to convert its Chapter 11 case into a case under Chapter 7 of the Bankruptcy Code a mere month after the filing of the original Petition and by converting the case from reorganization to liquidation without informed authorization or consent, and/or in other ways that may be discovered throughout the course of this litigation, Defendant Weinstock breached the duty that it owed to HMR in violation of the standards reasonably to be expected of a reasonably competent practitioner in the legal profession, and in these circumstances, and by its acts and omissions as alleged

14

herein, negligently failed to render proper legal representation to HMR.

31.    That, but for Defendant Weinstock's and Defendant Richardson's negligent, reckless and careless breaches of duty, as described above, HMR would have remained in business under a plan of reorganization, would not have lost valuable contracts, and would not have had to liquidate.

32.    As a direct and proximate result of Defendant Weinstock's and Defendant Richardson's negligence, recklessness and carelessness, HMR was forced to abandon all business operations, suffered the loss of government contracts valued in the multiple millions of dollars, and was forced to liquidate.

33.    That throughout the course of events set forth above, Defendant Weinstock sent and/or should have sent reports to Defendant PPLS and Defendant PPLS monitored and/or should have monitored Defendant Weinstock's performance regularly with respect to all PPLS members including HMR.

34.    That Defendant PPLS had a duty to keep itself reasonably apprised of the activities of its provider firms with respect to its paying members including specifically the activities of Defendant Weinstock with respect to HMR and its representatives.

35.    That in view of Defendant Weinstock's practice of regular reporting to PPLS and PPLS's oversight and monitoring of Weinstock, Defendant PPLS knew or should have known of Weinstock's mishandling of HMR's case and malpractice.

15

36.    That Defendant PPLS had a duty to assign HMR and its representatives to a different PPLS provider in view of its knowledge of Defendant Weinstock's actions.

37.    As a legal services provider in the State of Maryland, Defendant PPLS owed HMR and its representatives a reasonable duty to exercise that degree of care and diligence as used by other legal service providers engaged in the practice of law and the provision of legal services.

38.    Defendant PPLS breached the aforesaid duties, by negligently, carelessly and unreasonably: (a) failing to keep itself reasonably apprised of the activities of its provider firms with respect to its paying members including specifically the activities of Defendant Weinstock with respect to HMR and its representatives; (b) failing to assign HMR and its representatives to a different PPLS provider where PPLS knew or should have known of Weinstock's mishandling of HMR's case and malpractice; (c) failing to exercise that degree of care and diligence as used by other legal service providers engaged in the practice of law and the provision of legal services; and/or (d) in other respects that might be discovered during the course of this litigation and/or at trial.

39.    That, but for Defendant PPLS's negligent breaches of duty, as described above, HMR would have remained in business under a plan of reorganization, would not have lost valuable contracts, and would not have had to liquidate.

40.    As a direct and proximate result of Defendant PPLS's negligence, HMR was

16

forced to abandon all business operations, suffered the loss of government contracts valued in the multiple millions of dollars, and was forced to liquidate.

WHEREFORE, Plaintiff STEVEN H. GREENFELD, TRUSTEE FOR THE BANKRUPTCY ESTATE OF HEALTH MANAGEMENT RESOURCES, INC. demands judgment against the Defendants, WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A., BRUCE RICHARDSON and PRE-PAID LEGAL SERVICES, INC., jointly and severally, in the sum of One Hundred Million Dollars ($100,000,000.00) and any such other and further relief to which Plaintiff is entitled.

## COUNT II - - - FRAUD (Weinstock and Richardson)

41.    Plaintiff reincorporates, as if fully stated herein, all of the allegations set forth in Paragraphs One through Forty (40) above.

42.    Defendant Weinstock and Defendant Richardson, for their own benefit, defrauded HMR by making intentional misrepresentations of material fact i.e. that they had filed a bankruptcy petition when they had not**,** that they were performing a "creditor workout" on behalf of HMR when they were not, and that HMR needed to liquidate when it did not; That these misrepresentations were made for the purpose of deceiving HMR, and were reasonably relied upon by HMR and that HMR has suffered damages as a result.

WHEREFORE, Plaintiff STEVEN H. GREENFELD, TRUSTEE FOR THE BANKRUPTCY ESTATE OF HEALTH MANAGEMENT RESOURCES, INC.

17

demands judgment against the Defendants, WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A. and BRUCE RICHARDSON in the sum of One Hundred Million Dollars ($100,000,000.00) compensatory damages and One Hundred Million Dollars ($100,000,000.00) punitive damages, jointly and severally, and any such other and further relief to which Plaintiff is entitled.

### COUNT III -- BREACH OF FIDUCIARY DUTY (Weinstock and Richardson)

43.     Plaintiff reincorporates, as if fully stated herein, all of the allegations set forth in Paragraphs One through Forty-Two (42) above.

44.     That Defendants Richardson and Weinstock had a fiduciary duty to HMR and had gained HMR's confidence and purported to act and give advice for the benefit of HMR and with HMR's interests in mind rather than Defendants' self-interests.

45.     That Defendants Richardson and Weinstock breached their fiduciary duty owed to HMR by failing to disclose to HMR their actions and omissions and by making efforts to obscure and conceal from HMR the effect that Defendants' conduct had upon HMR's business.

46.     That Defendant Weinstock breached its fiduciary duty to HMR by continuing to provide so-called advice, counsel and representation to HMR notwithstanding the open and obvious conflict of interest that had developed between HMR's interests and Defendant Weinstock's interests.

18

47.     That Defendant Weinstock breached its fiduciary duty to HMR by neglecting and mishandling HMR's legal needs for which Weinstock had been retained as described herein, by advising HMR to convert its Chapter 11 case into a case under Chapter 7 of the Bankruptcy Code a mere month after the filing of the original Petition and/or by converting the case from reorganization to liquidation without informed authorization or consent.

48.     That HMR was harmed by Defendant Weinstock's and Defendant Richardson's breach of fiduciary duty to HMR and HMR was forced to abandon all business operations, suffered the loss of government contracts valued in the multiple millions of dollars, and was forced to liquidate.

WHEREFORE, Plaintiff STEVEN H. GREENFELD, TRUSTEE FOR THE BANKRUPTCY ESTATE OF HEALTH MANAGEMENT RESOURCES, INC. demands judgment against the Defendant**s**, WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A. and BRUCE RICHARDSON in the sum of One Hundred Million Dollars ($100,000,000.00) compensatory damages and One Hundred Million Dollars ($100,000,000.00) punitive damages, jointly and severally, and any such other and further relief to which Plaintiff is entitled.

## COUNT IV -- BREACH OF CONTRACT (Weinstock and PPLS)

49.     Plaintiff reincorporates, as if fully stated herein, all of the allegations set forth in

19

Paragraphs One through Forty-Eight (48) above.

50.    That in or about February or March, 2004, HMR entered into a contract with Defendant PPLS whereby PPLS agreed to provide unto HMR competent legal counsel under a "pre-paid" legal plan.  Pursuant to this contract, PPLS agreed to refer HMR to counsel that was specially suited to provide services as needed by HMR on a reduced-fee or no-fee basis.

51.    That at the aforementioned time, Defendant Weinstock received the vast majority of PPLS referrals in the State of Maryland regardless of area of practice requested or specialty needed.

52.    That PPLS substantially and materially breached its contract with HMR by failing to provide competent counsel, by failing to monitor or maintain oversight of its provider firm Weinstock as described above, and/or in other ways described herein or which may be revealed in discovery, and thereby caused HMR's damages asserted herein.

53.    That on or about March 1, 2004, Defendant Weinstock undertook representation of HMR and provided HMR with a generic letter to send to HMR creditors advising creditors that HMR "is undergoing a period of time in which it is restructuring its finances and affairs", asking creditors to be "patient" during this period, stating "we anticipate shortly coming up with a plan to address the needs and demands of creditors in a timely and efficient fashion" and referring any questions "in the interim" to "my

20

counsel, Bruce L. Richardson, Weinstock, Friedman & Friedman, P.A. who can provide you with additional details while this matter is pending."

54.     On or about March 25, 2004, although Defendant Weinstock had already begun providing legal services to HMR, a formal retainer agreement was entered into between Mr. Coleman on behalf of HMR and Defendant Weinstock.   Under the agreement, in what was termed a "Creditor Workout", Weinstock was to provide professional legal services regarding the handling of HMR's creditors and debt payment, including services with respect to negotiating settlement for outstanding accounts payable.   The Agreement was referenced by Weinstock as "Re: Creditor Workout, Our Intake No.: 341940."   An initial retainer of Five Hundred Dollars ($500.00) was charged with a billable rate of One Hundred and Twenty Five Dollars ($125.00) per hour to be applied.   The fee under the retainer agreement was discounted as per the aforementioned PPLS membership.   Implicit in the terms of any Retainer Agreement by and between a licensed attorney and a client in the State of Maryland is the duty to act with due care and diligence in the handling of client matters and to be honest and forthright with a client at all times and about all matters concerning the client's case.

55.     That in October, 2004, HMR entered a Retainer Agreement with Defendant Weinstock which provided for HMR to pay Weinstock Five Hundred Dollars ($500.00) for legal representation in reference to the filing of a bankruptcy case for reorganization. Implicit in the terms of this Retainer Agreement as well was Defendants' duty to act with

21

due care and diligence in the handling of client matters and to be honest and forthright with a client at all times and about all matters concerning the client's case.

56.    That Defendant Weinstock materially and substantially breached the aforesaid contracts by failing to assign an attorney competent to handle the requirements of HMR's legal needs and matters, failing to properly supervise, manage and maintain control and oversight over said attorney with respect to the handling of HMR's legal affairs, failing to disclose to HMR facts material to Weinstock's representation, failing to represent HMR in an honest, forthright and non-negligent manner and in all other respects described above or which may be revealed throughout the course of discovery in this case.

57.    As a direct and proximate result of the aforesaid breaches of contract by each of the Defendants, HMR suffered damages, injuries and losses, was forced to abandon all business operations, suffered the loss of valuable contracts and accounts valued in the multiple millions of dollars, and was forced to liquidate.

WHEREFORE, Plaintiff STEVEN H. GREENFELD, TRUSTEE FOR THE BANKRUPTCY ESTATE OF HEALTH MANAGEMENT RESOURCES, INC. demands judgment against the Defendants, WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A. and PRE-PAID LEGAL SERVICES, INC. in the sum of One Hundred Million Dollars ($100,000,000.00) compensatory damages, jointly and severally, and any such other and further relief to which Plaintiff is entitled.

22

Respectfully submitted,

Date: February 4, 2008

_____/s/_____

ADAM M. FREIMAN

Sirody, Freiman & Feldman, P.C.

1777 Reisterstown Road, Suite 360

Baltimore, Maryland 21208

(410) 415-0445

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 4th day of February, 2008, that a copy of the aforegoing Amended Complaint and Comparison Copy of Amended Complaint were served, either electronically or via first class mail, postage prepaid, to:

23

Deborah M. Whelihan, Esquire

Jordan, Coyne & Savits, L.L.P.

1100 Connecticut Ave., N.W., Suite 600

Washington, D.C., 20036

Attorneys for Defendant Weinstock, Friedman & Friedman, P.A.


Bruce L. Marcus, Esquire

Joseph A. Compofelice, Jr., Esquire

Marcus & Bonsib

6411 Ivy Lane, Suite 116

Greenbelt, Maryland 20770

Attorneys for Defendant Pre-paid Legal Services, Inc.


_____/s/_____

Adam M. Freiman

Sirody, Freiman & Feldman, P.C.